990 F.2d 1298
 301 U.S.App.D.C. 28
 CONSUMER FEDERATION OF AMERICA and United States Public
Interest Research Group, Petitioners,
v.
CONSUMER PRODUCT SAFETY COMMISSION, Respondent,
All-Terrain Vehicle Distributors, et al., Intervenors.
 No. 91-1551.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Jan. 15, 1993.
Decided April 9, 1993.
 
 [301 U.S.App.D.C. 29] Petition for Review of an Order of the Consumer Product Safety Commission (56FR47166).
 Leslie A. Brueckner, New York City, with whom Alan B. Morrison, David C. Vladeck, and Katherine A. Meyer, Washington, DC, were on the brief, for petitioners.
 Margot E. de Ferranti, of the bar of the District of Columbia Court of Appeals, pro hac vice, by special leave of the court, with whom Stuart M. Gerson, Asst. Atty. Gen., Jay B. Stephens, U.S. Atty. at the time the brief was filed, Robert S. Greenspan, Atty. Department of Justice, Daniel S. Lemberg, Asst. Gen. Counsel, Harleigh P. Ewell and Leonard H. Goldstein, Attys., Consumer Product Safety Com'n, Washington, DC.
 Howard P. Willens, Theodore C. Whitehouse, Mark L. Gerchick, Harry W. Cladouhos, and Charles A. Hunnicutt, Washington, DC, were on the joint brief, for intervenors, American Honda Motor Co., Inc., Yamaha Motor Corp., USA, Kawasaki Motors Corp., USA, American Suzuki Motor Corp., and Polaris Industries, L.P.
 Before: WALD, RUTH BADER GINSBURG, and D.H. GINSBURG, Circuit Judges.
 Opinion for the court filed by Circuit Judge RUTH BADER GINSBURG.
 Concurring opinion filed by Circuit Judge D.H. GINSBURG.
 RUTH BADER GINSBURG, Circuit Judge:
 
 
 1
 In September 1991, the Consumer Product Safety Commission (CPSC or Commission) terminated a rulemaking proceeding commenced in May 1985 to address risks associated with all-terrain vehicles (ATVs). Petitioning for judicial review, Consumer Federation of America and United States Public Interest Research Group challenge one aspect of the CPSC's action--the decision not to pursue, at this time, a ban on the sale of new adult-size ATVs for use by children under age 16.[1] In view of the Commission's ongoing efforts to check ATV safety hazards by other means, and CPSC's indication that it will reconsider the rulemaking route if current responses to ATV hazards prove inadequate, we deny the petition for review.
 
 I. BACKGROUND
 
 2
 ATVs are single rider three- or four-wheeled motor vehicles intended for off-road use on unpaved terrain. The vehicles have handlebar steering and a seat that the operator straddles. About 70 percent of ATV use is for recreational purposes; some 50 percent of ATV drivers, however, use their ATVs for nonrecreational purposes at least some of the time. ATVs weigh between 250 and 500 pounds and have large, low-pressure tires. ATVs designed for adults have engines of greater than 90 cubic centimeters (cc) displacement; youth models have 70 to 90 cc engines. In 1989, over 2.75 million ATVs were in use in the United States.
 
 
 3
 Because ATVs have solid rear axles and a high center of gravity, a rider must shift her weight to maintain stability during turns or on grades. As the Commission [301 U.S.App.D.C. 30] describes the vehicles, ATVs are "rider-interactive." This characteristic, among others, makes ATVs challenging, and potentially dangerous, to operate.
 
 
 4
 In May 1985, prompted by a surge in the number of deaths and injuries from ATV-related accidents,[2] the Commission published an Advance Notice of Proposed Rulemaking (ANPR) concerning three- and four-wheeled ATVs. See 50 Fed.Reg. 23,139 (May 31, 1985).[3] The ANPR announced and sought public comment on a wide range of possible regulatory options, including publication of safety information, development of voluntary standards, imposition of mandatory standards or product bans, and a federal court action to declare ATVs an "imminent hazard." See id. at 23,142-43 (discussing regulatory options under Consumer Product Safety Act (CPSA), 15 U.S.C. §§ 2051 et seq., and Federal Hazardous Substances Act (FHSA), 15 U.S.C. §§ 1261 et seq.).
 
 
 5
 After further study, the Commission decided on pursuit of a civil action under section 12 of the CPSA to gain a judicial declaration that ATVs are an "imminently hazardous consumer product." 15 U.S.C. § 2061(b)(1) (authorizing "such temporary or permanent relief as may be necessary to protect the public" from an "imminently hazardous consumer product"). During preparation of the action, CPSC conducted negotiations with the ATV industry on measures to reduce ATV-related deaths and injuries. On December 30, 1987, the Department of Justice filed an "imminent hazard" lawsuit against the major distributors of ATVs. See United States v. American Honda Motor Co., Civ. No. 87-3525, 1987 WL 33507 (D.D.C.) (filed Dec. 30, 1987) (American Honda Motor Co.).[4] That same day, the Commission and the defendant distributors entered into preliminary consent decrees.
 
 
 6
 Four months later, the court approved a detailed final consent decree, effective for a term of ten years. See American Honda Motor Co., Final Consent Decree (filed Apr. 28, 1988) (Consent Decree) (reprinted in Joint Appendix (J.A.) at 50).[5] The Consent Decree immediately prohibited the sale of new three-wheeled ATVs, see Consent Decree p F.1-2,[6] and provided that the [301 U.S.App.D.C. 31] distributors would "attempt in good faith to reach agreement on voluntary ATV performance standards satisfactory to the Commission." See id. p L.2.[7]
 
 
 7
 Warnings to and education of consumers are main features of the Consent Decree. The distributors agreed to offer free "hands-on" training courses to ATV purchasers. See id. p K; see also id. p K.2.d (special provisions governing training classes attended by children under 16). They also promised to emphasize safety information in advertisements and to undertake an "outreach program" to supply safety materials to consumer groups. See id. pp I-J; see also id. Appendices K (guidelines for promotional advertisements) and N (requirements for specialized safety advertisements).
 
 
 8
 Under the heading "Ages for Operating ATVs," the Consent Decree required the distributors to "represent affirmatively" in their advertising "that ATVs with engine sizes [between 70 and 90 cc] should be used only by those aged 12 and older," and that ATVs "with engine sizes of greater than 90 cc should be used only by those aged 16 and older." Id. p G.1-2 (emphases in original). The distributors promised to "use their best efforts to reasonably assure" that ATVs would "not [be] purchased by or for the use of any person" under the specified ages. Id. p G.3. They furthermore agreed to endeavor to implement this relief by working with the retail sellers of ATVs. Id.[8]
 
 
 9
 The Consent Decree described four warning labels distributors must attach to all new ATVs: (1) a "general warning label" cautioning users to seek safety training and warning against hazardous conduct such as operating ATVs on public roads; (2) an "age recommendation warning label" stating (in the case of adult-size ATVs) "NEVER operate this ATV if you are under age 16"; (3) a "passenger warning label," cautioning against riding as a passenger; and (4) a "tire pressure recommendation label" warning against improper tire pressure or overloading. See id. p H.1.a. (1); id. Appendices A-D. In addition, the distributors agreed to ensure that their dealers make available to actual and prospective buyers a CPSC-approved video on ATV safety and that dealers display a four-foot by four-foot safety poster showing updated ATV death statistics. See id. p H.3.b. Both the video and the poster warn that children under 16 should not ride adult-size ATVs. The minimum ages are to be set forth as well in ATV owners' manuals, on "hang tags" placed on ATVs offered for sale, and in "safety alert" communications provided to ATV buyers. See id. p H.3; Appendix F (requirements for owners' manuals); Appendix I, § II.A.3 (guidelines for point-of-purchase materials, including hang tags, posters, and videos).
 
 
 10
 In its ruling approving the Consent Decree, the district court stated: "No decree designed to protect consumers has ever gone this far in meeting such a massive national consumer problem." American Honda Motor Co., Memorandum & Order at 8 (D.D.C. Apr. 27, 1988) (reprinted in J.A. at 34, 41). The court cautioned, however, that if the decree proved "not effective in reducing deaths and serious injuries" after a reasonable testing period, the Commission would be "free to proceed within the framework of the [Consumer Product Safety] Act and consider what further protection for the public may be necessary." Id. at 13. A "particular concern" would arise, the court added, "if children over 12 years of age and their parents have not been responsive to the warning information [301 U.S.App.D.C. 32] and other precautions established by the decree." Id.
 
 
 11
 In December 1988, an undercover CPSC survey revealed that about 70 percent of Virginia ATV dealers were making age recommendations inconsistent with those set out in the Consent Decree. See J.A. at 328. In response, the Commission required distributors to send reminder notices to dealers emphasizing the decree's minimum age provisions, and warning dealers that nonobservance of the age specifications could lead to termination of their franchises. See id. A nationwide survey conducted in June and July 1989 showed that 56 percent of dealers were still ignoring the minimum age prescriptions. See id. The Commission then secured promises from distributors to institute, beginning in late 1990, a two-year undercover monitoring program using randomly selected samples of dealerships. See J.A. at 329. Distributors agreed to terminate the franchises of dealers who repeatedly failed to provide the age warnings. See id. Initial results of the monitoring program, based on six months' data, revealed compliance rates of 72-86 percent (on-site monitoring) and 82-89 percent (telephone monitoring). See J.A. at 654-56.
 
 
 12
 In 1990 and early 1991, CPSC staff undertook a major review of ATV safety. See generally Briefing Package on All-Terrain Vehicles (March 1991) (reprinted in J.A. at 312). The staff reported that ATV-related injuries treated in emergency rooms in U.S. hospitals, though "still relatively high," had "declined from about 86,000 in 1986 to about 52,000 in 1990." J.A. at 330. Injuries on three-wheeled ATVs--vehicles not marketed new since 1988--had declined sharply; "[f]or four-wheel ATVs, a rising trend in injuries peaked in 1988 at 33,000" and was "projected to decrease to 29,000 by 1992." Id.[9]
 
 
 13
 Total ATV-related deaths had "declined from an estimated 347 in 1986 to about 250 in 1989," though Commission staff estimated that deaths associated with four-wheel ATVs would increase "from 97 in 1986 to 165 in 1992 due to the increased number of four-wheel ATVs in use." J.A. at 333. Explaining why annual deaths associated with four-wheel ATVs have exceeded deaths associated with three-wheelers since 1988, the Commission staff stated: as a result of the stop-sale of three-wheel ATVs, "fewer of them [are] in use, they have more experienced operators, and they are driven fewer hours per year." J.A. at 333. For riders under 16 years old, CPSC's staff review showed a marked drop in deaths associated with three-wheel ATVs between 1986 and 1989; the youth death-risk associated with four-wheelers, however, showed no statistically significant decrease during that period. See J.A. at 370.
 
 
 14
 The staff's review, presented in March 1991, considered four regulatory options: (1) banning all new ATVs; (2) banning all new adult-size ATVs for use by children under 16 years old (described herein as a "youth ban"); (3) developing new performance standards for four-wheeled ATVs; and (4) withdrawing the ANPR published in May 1985. See J.A. at 316. The staff recommended withdrawing the ANPR, citing "significant reduction in ATV-related injuries and deaths since 1985," the absence of "currently feasible performance standards for four-wheel ATVs with significant demonstrable injury-reduction potential," and the "lack of cost/benefit findings to support the issuance of the proposed bans." Id.[10]
 
 
 15
 Regarding the youth ban option, CPSC staff noted that the prohibition could function as a "strong warning" to parents against purchasing adult-size ATVs for use by their children, and might improve dealer compliance with age specifications "by increasing the penalty for being caught." J.A. at 344; see 15 U.S.C. §§ 2069, 2070 (civil and criminal penalties for violation of [301 U.S.App.D.C. 33] rule made under CPSA). Staff pointed out, however, that a youth ban would be difficult to enforce and might not prove significantly more effective than the notification provisions contained in the Consent Decree. J.A. at 345.
 
 
 16
 In April 1991, a three-member Commission, in accord with CPSC's staff recommendation, but by divided votes, decided to impose no new restraints and to terminate the rulemaking. See J.A. at 603-14.[11] The Commission set out the reasons for its decision in a September 1991 notice. See 56 Fed.Reg. 47,166 (Sept. 18, 1991). "Although current injury rates leave no doubt that ATV riding can be a dangerous activity," CPSC stated, "the rate of injury has been reduced significantly over the span of the Commission's involvement." Id. at 47,170. The Commission cited the staff's predictions of further declines in ATV injury rates and noted that it was too soon to gauge the injury-reducing efficacy of the Consent Decree. Id.
 
 
 17
 The Commission specifically explained why it decided not to pursue performance standards or a total ban, see id. at 47,171-72, judgments not challenged here. CPSC then addressed the youth ban option:
 
 
 18
 It is not clear ... that such a ban will be any more effective in preventing injuries to children than are the age recommendations in the consent decrees, i.e., that ATVs over 90 cc in engine size should not be ridden by persons under 16, and the agreements by the distributors to monitor dealer compliance with the age recommendations and terminate franchises of dealers who do not comply. In addition, such a ban would be extremely difficult to enforce and would likely shift much of the burden of monitoring compliance from the distributors to the Commission.
 
 
 19
 At present the consent decrees require ATV hang tags and labels warning against the use of adult-sized ATVs by children under 16. In addition, some distributors obtain formal acknowledgement from purchasers that they have been informed of risks.
 
 
 20
 The consent decrees require that distributors use their best efforts to assure that adult-sized ATVs are not purchased for use by children. The distributors have assured CPSC that they are monitoring the dealers' conformance with the age recommendations. While serious concerns have been raised in the past about the level of conformance, the distributors have declared their intention to monitor and enforce this requirement through their franchise agreements. Therefore, it can be expected that future buyers will be better advised that children should not ride adult-sized ATVs.
 
 
 21
 Id. at 47,172. The Commission added that it would monitor the distributors' efforts to ensure dealer adherence to the age specifications and "could consider whether a [youth] ban ... is warranted if the distributors' age recommendations prove to be ineffective." Id. Finally, the Commission noted that, unlike the states, CPSC lacks "statutory authority to prohibit children from riding adult-size ATVs." Id. at 47,172. Therefore, the Commission had directed its staff to examine the feasibility of developing model state legislation and of other means to "promote ATV safety at the state level." Id. at 47,173.
 
 
 22
 In September 1991, four organizations that had participated as amici during the district court's initial consideration of the [301 U.S.App.D.C. 34] Consent Decree (including both petitioners), supported by thirty-five states appearing as amici, moved to intervene to seek invigoration and enforcement of the decree. After affording the movants an opportunity to propose specific amendments to the text of the 1988 decree, the district court, in May 1992, denied the intervention motion. Concluding that the Consent Decree did not appear "to have been breached in any material respect," the district court noted, in particular, recently reported improvements in dealer compliance with the age recommendations. American Honda Motor Co., Memorandum on Motion to Intervene at 4-5 (May 28, 1992).
 
 II. DISCUSSION
 A. The Current Controversy
 
 23
 We emphasize, initially, the confines of the current controversy. Petitioners do not fault the Commission for failure to impose mandatory standards or a total product ban. They urge only that CPSC acted arbitrarily in failing to ban the sale of adult-size ATVs for use by children. See 5 U.S.C. § 706(2)(A) (Administrative Procedure Act instruction that court shall set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"). Because of the high price of ATVs (in 1989, the average price of a new ATV was $3,000, see J.A. at 450), a ban on sales for child riders would be directed, in the main, to adult purchasers. The Consent Decree already in place requires multiple notices that adult-size ATVs should never be operated by children under 16. A youth ban would make it possible, however, for the Commission, state attorneys general, and private persons to proceed directly against nonconforming dealers instead of depending on distributor enforcement. See 15 U.S.C. § 2073 ("Any interested person (including any individual or nonprofit, business, or other entity) may bring an action in ... United States district court ... to enforce a consumer product safety rule ... and to obtain appropriate injunctive relief.")[12] A ban of this nature would be a novel venture for the Commission.[13]
 
 B. Standard of Review
 
 24
 The Commission contends that the withdrawal of the ANPR is equivalent to a decision not to initiate a rulemaking, a decision so discretionary that it qualifies for our most deferential review. See Consumer Fed'n of America v. Consumer Product Safety Comm'n, 883 F.2d 1073, 1078 (D.C.Cir.1989) ("We apply an extremely deferential standard of review to an agency's refusal to institute rulemaking proceedings."). Petitioners, in contrast, stress that the Commission terminated an ongoing rulemaking; they therefore urge that CPSC exposed its action to more searching scrutiny. See Environmental Defense Fund v. EPA, 852 F.2d 1316, 1324-25, 1326 (D.C.Cir.1988) (overturning agency's decision to withdraw proposed revision of regulation), cert. denied sub nom. American Mining Cong. v. EPA, 489 U.S. 1011, 109 S.Ct. 1120, 103 L.Ed.2d 183 (1989); Professional Drivers' Council v. Bureau of Motor Carrier Safety, 706 F.2d 1216, 1220-21 & n. 15 (D.C.Cir.1983) (reviewing withdrawal of ANPR issued by Bureau of Motor Carrier Safety under Motor Carriers Act, 49 U.S.C. § 304 (1976), as termination of rulemaking). We conclude that our review stance lies between the poles described by the parties.
 
 
 25
 [301 U.S.App.D.C. 35] After six years of study, the Commission had before it an extensive record on ATV safety hazards. The materials presented to the Commission by its staff in 1991 specifically addressed the merits of the youth ban. The "extreme deference" generally applicable to refusals to embark on rulemakings is therefore not appropriate here. Cf. Williams Natural Gas Co. v. FERC, 872 F.2d 438, 443 (D.C.Cir.1989) (when agency has "terminated a docket after a substantial record has been compiled[,]" "tentative[ly] conclu[ded] that a change in the regulations is warranted," and "received numerous comments on the issue from interested parties," a court "will generally have a sufficient evidentiary basis for determining whether the [agency's] ultimate decision was arbitrary and capricious"). But cf. id. at 442-43 (describing review of agency's decision not to issue new regulation as "somewhat more deferential[ ]" than decision to promulgate, rescind, or amend regulation because non-promulgation does not "alter the regulatory status quo").
 
 
 26
 Although not as "extremely deferential" as the Commission advocates, our regard for the Commission's decision not to pursue the youth ban is highly respectful. The "advance notice of proposed rulemaking" was a generalized and tentative undertaking. That May 1985 notice announced that CPSC would consider the full panoply of statutory remedies and would not proceed to the proposed rule stage if less muscular approaches proved adequate. See 50 Fed.Reg. at 23,142. The "youth ban" proposal apparently did not emerge until well after the Commission had decided to address ATV risks through the "imminent hazard" action and ensuing Consent Decree. When the Commission voted in 1991 to terminate the rulemaking, the youth ban was still only one among several regulatory options CPSC held in reserve. Cf. Natural Resources Defense Council v. SEC, 606 F.2d 1031, 1047 (D.C.Cir.1979) (suggesting that when administrative record is "narrowly focused" on "particular rules," judicial review of rulemaking termination appropriately may be more rigorous).
 
 
 27
 In according a generous measure of respect to the Commission's decision, we are mindful as well of the alternative course CPSC took. See Professional Drivers' Council, 706 F.2d at 1221 (review of termination of rulemaking was "circumscribed" where agency had not "shirk[ed] its statutory duty by refusing to regulate"). By instituting the "imminent hazard" action, negotiating the comprehensive Consent Decree, and securing the dealer monitoring agreements, the Commission has taken meaningful action against ATV dangers generally, with harm to children a concern particularly addressed.[14]
 
 
 28
 We accord due respect, moreover, to an agency's selection of means for pursuing policy goals. Such choices implicate the allocation of scarce administrative resources; they involve forecasts about the consequences of proposed regulatory actions and other matters the agency ordinarily is best equipped to judge. See National Wildlife Fed'n v. Environmental Protection Agency, 925 F.2d 470, 474-75 (D.C.Cir.1991); see also Heckler v. Chaney, 470 U.S. 821, 831-32, 105 S.Ct. 1649, 1655-56, 84 L.Ed.2d 714 (1985) (stating reasons for nearly complete judicial deference to agency's decision not to bring enforcement action); Moog Industries, Inc. v. FTC, 355 U.S. 411, 413, 78 S.Ct. 377, 379, 2 L.Ed.2d 370 (1958) (deference to agency's choice of remedies). In sum, the degree of deference we properly give to the Commission in this case, while not "extreme," is "very substantial."[301 U.S.App.D.C. 36] C. The Rationality of the Commission's Decision
 
 
 29
 Applying the respectful review standard just explained, we leave undisturbed the Commission's rulemaking termination and, specifically, CPSC's decision against current deployment of a youth ban. As CPSC stated in its September 1991 rulemaking termination notice, experience under the Consent Decree was not yet adequate to enable the Commission to judge the impact of the decree on ATV casualty rates. See 56 Fed.Reg. at 47,170. The Commission opted, for the time being, to concentrate on monitoring and enforcing the Consent Decree without simultaneously imposing a partial product ban.[15] That choice was rational. Under the CPSA, a youth ban could not be implemented absent a finding that "less burdensome" requirements were inadequate to deal with the problem. See 15 U.S.C. § 2058(f)(3)(F) (final rule must be found to impose "the least burdensome requirement which prevents or adequately reduces the risk of injury for which the rule is being promulgated").[16] The Commission could not easily make that determination before results were in on the Consent Decree. See 15 U.S.C. § 2060(c) (findings accompanying final consumer product safety rule or standard issued under CPSA must be "supported by substantial evidence on the record taken as a whole"); Aqua Slide 'N' Dive v. Consumer Product Safety Comm'n, 569 F.2d 831, 837-38, 840-44 (5th Cir.1978) (discussing CPSA's "substantial evidence" standard and setting aside product standards as inadequately supported).[17]
 
 
 30
 Full disclosure of ATV safety risks is a central objective of the Consent Decree. Cf. 15 U.S.C. § 2051(b)(2) (a key purpose of CPSA is "to assist consumers in evaluating the comparative safety of consumer products"). If the decree is properly implemented, prospective buyers will confront strongly worded warnings against underage use on the stickers and hang tags affixed to new ATVs and on the large posters displayed by dealers. The minimum age warnings will be repeated in the "safety alerts" given to buyers, the ATV owners' manuals, and the CPSC-approved safety video dealers are to use to inform their customers.
 
 
 31
 The Commission, in short, agrees with petitioners that adult-size ATVs should never be sold for use by persons under age 16, and it has taken action we cannot now say will prove ineffective. We take into account in reaching this judgment the absence of any call for a total product ban on four-wheel ATVs, the novelty of the partial ban petitioners want the Commission to install immediately, see supra note 13, and the existence of authority in the states, but [301 U.S.App.D.C. 37] not in the Commission, to set minimum age requirements for drivers of ATVs.[18]
 
 
 32
 We recognize that the Commission could have retained the May 1985 ANPR in place pending further experience under and review of the Consent Decree regime.[19] The ANPR, however, was notably broad and general in character and did not home in on the prospect of a youth ban. The Commission was not arbitrary, we hold, in deciding to withdraw its original, all-encompassing ANPR. CPSC could later publish a regulation-specific ANPR containing a proposed youth ban, should it eventually settle on that option.
 
 
 33
 Critical to our decision, the Commission has undertaken, as reported in its September 1991 rulemaking termination notice, to monitor the Consent Decree's "effectiveness in preventing persons under age 16 from riding adult-size ATVs," 56 Fed.Reg. at 47,167, and can resume consideration of the youth ban "if the distributors' age recommendations prove to be ineffective." Id. at 47,172. We have no cause to doubt the genuineness of the Commission's representation that it "remains especially concerned about the number of children under age 16 who are injured or killed in ATV accidents," id. at 47,167, and its readiness to revisit the youth ban if current monitoring reveals a need for that measure.[20]
 
 
 34
 While we uphold the Commission's decision not to proceed, at this juncture, beyond the Consent Decree, we note two points of concern about the September 1991 notice terminating the rulemaking. First, the Commission stated, without elaboration, that a youth ban "would be extremely difficult to enforce and would likely shift much of the burden of monitoring compliance from the distributors to the Commission." 56 Fed.Reg. at 47,172. As a supplement to, rather than a substitute for, the Consent Decree, however, see supra note 15, a youth ban need not reduce the burden shouldered by the distributors. Nor, up to now, has the Commission systematically studied the "costs" and "benefits" of a federally-imposed ban, and the enforcement tab remains undetermined.[21]
 
 
 35
 Second, the Commission mentioned as "an obstacle to [product] bans " "the loss of enjoyment and utility that users of the product will experience." 56 Fed.Reg. at 47,171 (emphasis added). We understand the Commission to mean in this context principally the proposed "ban of all new ATVs." Id. at 47,172 (emphasis in original). [301 U.S.App.D.C. 38] While the Commission considered full information to consumers of the risks involved "preferable to a [total new product] ban," id., CPSC has endorsed the view that, for children under the prescribed ages, risk warnings alone will not do. Pursuant to the Consent Decree, ATV labels, tags, manuals, and other sales-related materials instruct that children below the minimum ages should "NEVER" ride ATVs. No doubt the Commission recognizes that children are less able than adults to evaluate risks. See J.A. at 344 (reference by CPSC staff to "Commission's general policy to afford maximum protection to vulnerable populations which include children"). Given children's evident limitations in judging the risks of attractive, yet hazardous products, we anticipate that, ultimately, the Commission will not rely upon the ATV-riding preferences of youths in deciding whether adult-size ATVs subject children to "unreasonable risks."[22]
 
 
 36
 Peripheral imperfections in the Commission's explanation, however, do not obscure the central point solidly made by CPSC: the Consent Decree regime should be tried out for a reasonable time before further measures are added to the regulatory agenda. See 5 U.S.C. § 706 (reviewing courts must take "due account of the rule of prejudicial error"); Carnegie Natural Gas Co. v. Federal Energy Regulatory Comm'n, 968 F.2d 1291, 1294 (D.C.Cir.1992) ("We will ... sustain an agency decision resting on several independent grounds if any of those grounds validly supports the result, unless there is reason to believe the combined force of these otherwise independent grounds influenced the outcome."); see also Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983) ("[Courts] will ... 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.' ") (citation omitted).
 
 CONCLUSION
 
 37
 Nothing in the CPSA prevented the Commission from further pursuing a rulemaking aimed at instituting a youth ban. We are not persuaded, however, that the Commission was "arbitrary" or "capricious" in preferring to test and evaluate the efficacy of the Consent Decree before considering additional regulation. In view of the Commission's representations that it "will continue to monitor the effectiveness of [the Consent Decree] program," 56 Fed.Reg. at 47,167, and "consider whether a ban of ATVs for use by children is warranted if the distributors' [efforts under the Consent Decree] prove ineffective," id. at 47,172, we deny the instant petition for review.
 
 
 38
 It is so ordered.
 
 D.H. GINSBURG, Circuit Judge, concurring:
 
 39
 I fully concur with the court's excellent opinion--to the extent that it decides the issues actually before us today. Unfortunately, however, the court appends a paragraph at the end of its opinion (Op. at 1307-08) in order to address a matter that even it acknowledges is "[p]eripheral" (Op. at 1308) and in fact formed no part of the Commission decision under review. Cf. SEC v. Chenery, 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947) ("a simple but fundamental rule of administrative law ... is ... that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency"). Therefore, the court's "wide-ranging remarks are not only dictum, but obiter." Scott v. United States, 419 F.2d 264, 282 (D.C.Cir.1969) (Leventhal, J., concurring).
 
 
 40
 When a court makes such a casual remark, it is all too likely to get things not quite right. Today's outing illustrates the point.
 
 
 41
 [301 U.S.App.D.C. 39] The court ventures to "anticipate that, ultimately, the Commission will not rely upon the ATV-riding preferences of youths in deciding whether adult-size ATVs subject children to 'unreasonable risks.' " The reason: "children's evident limitations in judging the risks of attractive, yet hazardous products." Op. at 1308. The purpose of a youth ban would be, of course, to prevent ATV-riding by children who would otherwise be riding them under the consent decree regime. One of the costs of such a ban is self-evidently the loss of enjoyment experienced by the children who are thereby prevented from riding, and the Commission must take that cost into account if it is to do a sensible cost-benefit analysis. See Consumer Product Safety Act, 15 U.S.C. §§ 2058(c)(1), 2058(f)(2) (when proposing or promulgating consumer safety product rule CPSC must provide, respectively, a preliminary and final "description of the potential benefits and potential costs" of the proposed rule, "including costs and benefits that cannot be quantified in monetary terms"); cf. EDITH STOKEY & RICHARD ZECKHAUSER, A PRIMER FOR POLICY ANALYSIS 134 (1978) (a cost-benefit analysis "requires systematic enumeration of all benefits and all costs, tangible and intangible, whether readily quantifiable or difficult to measure, that will accrue to all members of society if a particular project is adopted") (emphases added). To be sure, that cost may be outweighed by the safety benefits of keeping those children off ATVs. The Commission, however, has not yet addressed in the first instance the question whose answer the court today "anticipate[s]," and it is both premature and presumptuous for the court to assume that children ride ATVs only because they are less able than adults to assess the risks involved. (In fact, since an ATV costs about $3000, there is almost surely an adult purchaser behind every presumably risk-insensitive child rider, and it will be for that parent to assess the risk that an ATV poses to her child.)
 
 
 42
 In sum, the court both invades the province of those charged in statute law with conducting a cost-benefit analysis, see CPSA, 15 U.S.C. §§ 2058(c)(1), 2058(f)(2), and risks creating analytic bedlam when it departs from its judicial role in order to "anticipate" an issue not now before it. Better to leave to the Commission those responsibilities that the Congress has vested in the Commission and to end our opinions when we have decided all of the issues necessary to the resolution of the dispute before us.
 
 
 
 [1]
 Five ATV distributors--American Honda Motor Co., Inc., American Suzuki Motor Corp., Polaris Industries, L.P., Yamaha Motor Corp., USA, and Kawasaki Motors Corp., USA--have intervened in support of the Commission's decision to terminate the rulemaking. Seventeen state attorneys general, appearing as amici curiae, urge the court to grant the petition for review
 
 
 [2]
 The Commission cited reports of "at least 161 deaths associated with ATVs" between January 1982 and April 1985, and 66,956 ATV-related injuries treated in hospital emergency rooms in 1984; the CPSC further reported an 80 percent increase in ATV-related injuries between 1984 and 1985. See 50 Fed.Reg. 23,139, 23,140 (May 31, 1985)
 
 
 [3]
 The Consumer Product Safety Act (CPSA), 15 U.S.C. §§ 2051 et seq. sets out a three-step process for issuing a consumer product safety rule. The Commission must first issue an ANPR that identifies the product, the risk of injury associated with it, and the regulatory options, and then solicit comments. Id. § 2058(a). Second, if CPSC finds existing and voluntary standards insufficient to reduce the risk, it may publish a proposed consumer product safety rule; the proposed rule must be accompanied by a "preliminary regulatory analysis" discussing the rule's "potential benefits and potential costs," and by a statement of "any reasonable alternatives." Id. § 2058(c). Third, within sixty days of the proposed rule's publication, CPSC must promulgate or withdraw the rule. See id. § 2058(d). If the Commission chooses to promulgate, it must, inter alia, publish a more comprehensive "final regulatory analysis." See id. § 2058(f)
 
 
 [4]
 The government centrally complained that distributors had failed to warn consumers of latent ATV safety risks. See American Honda Motor Co., Complaint of United States pp 32, 35 (alleging that appearance of ATVs creates "the illusion of a safe, stable easy-to-operate vehicle," giving inexperienced riders "no hint of the crippling or fatal accidents that can suddenly occur, even while attempting to execute unexceptional, simple riding maneuvers"); id. pp 46-56 (charging defendants with misleading the public, especially children, by advertising ATVs as products easily operated without training or protective gear and on all types of terrain)
 
 
 [5]
 Two decrees were filed and approved, one governing the four foreign-owned distributors, and the other, the lone U.S.-owned distributor, Polaris Industries; because the two decrees do not differ on matters relevant to our decision, this opinion refers to the decrees in the singular
 
 
 [6]
 Though injury rates on three-wheeled ATVs have been lower than on four-wheelers since sale of new three-wheelers stopped in 1988, the Commission continues to believe that, holding other factors constant, four-wheelers are safer. See Joint Appendix (J.A.) at 360, 401 (statistical study by CPSC Directorate for Epidemiology). But cf. id. at 370 (Directorate's conclusion that, holding other factors constant, "there was no significant difference in the risk of death for three- and four-wheel ATVs in either" 1985 or 1989)
 
 
 [7]
 In January 1989, the Commission approved certain voluntary standards submitted by the ATV distributors pursuant to the Decree. See 54 Fed.Reg. 1407 (Jan. 13, 1989). These standards included "equipment and configuration requirements," brake performance specifications, and a "pitch stability" standard "assur[ing] a minimum resistance to rearward overturn." Id. at 1409-10
 
 
 [8]
 See also Consent Decree p B.3 ("best efforts" include distributors' undertaking to negotiate contractual terms requiring dealers to meet conditions of Consent Decree); id. p H.3.a. (1) (requiring distributors to use "best efforts to ensure that oral communications of retail dealers ... contain information not inconsistent with" safety-related requirements of Consent Decree)
 
 
 [9]
 CPSC staff calculated that injury rates per 100 four-wheel ATVs in use had declined from 2.76 in 1986 to 1.92 in 1990. See J.A. at 401
 
 
 [10]
 The Commission's Office of Compliance and Enforcement opposed withdrawal of the ANPR, reasoning that it "would send the wrong message to the public (that CPSC is no longer concerned about the number of ATV-related deaths and injuries)." J.A. at 317
 
 
 [11]
 Commissioner Anne Graham moved to propose the youth ban, emphasizing that ATV injuries and deaths remained "unacceptably high" and that children under 16 still accounted for a large proportion of ATV injuries. J.A. at 629-631A. This motion was defeated 2-1, with Chairman Jacqueline Jones-Smith and Commissioner Carol Dawson voting against. Chairman Jones-Smith then moved to cease work toward new performance standards; this motion passed, 2-1, with Chairman Jones-Smith and Commissioner Dawson voting for, and Commissioner Graham dissenting. J.A. at 608. Chairman Jones-Smith next moved to continue the ANPR until the effectiveness of the consent decree was evaluated, J.A. at 610-614; this motion was defeated 2-1, with Commissioners Graham and Dawson voting against, J.A. at 622. The Commission thereupon unanimously directed its staff to prepare a draft notice to withdraw the ANPR. Chairman Jones-Smith and Commissioner Dawson voted to approve that notice, and Commissioner Graham dissented. J.A. at 664
 
 
 [12]
 The seventeen attorneys general before us as amici emphasize that they "have the authority under [the CPSA private enforcement provision] and [their states'] consumer protection statutes to enforce [a youth] ban on behalf of [their] citizens." Brief of Amici Curiae at 1-2; see also id. at 6 (asserting that "state Attorneys General offices have been extremely active in urging the CPSC to take stronger measures to protect children from ATVs," and that, in this light, Commission should have taken into account the ability of those offices to enforce a youth ban)
 
 
 [13]
 The Commission has experience with at least one other partial product ban. See 16 C.F.R. §§ 1500.18(a)(4), 1500.86(a)(3) (1988) (ban on sale of "lawn darts" in toy stores or toy departments or if improperly labeled). CPSC reports the ATV youth ban would be unprecedented, however, in one key respect: it would require ongoing supervision of dealer communications with potential customers. See Brief for Respondent at 17 n. 8
 
 
 [14]
 The Commission's decision to deal with the ATV problem through the Consent Decree is consistent with the approach of the CPSA, which requires CPSC to show that voluntary standards would be insufficient before it may promulgate a mandatory consumer product safety rule or standard. See 15 U.S.C. § 2058(b), (c)(3). The Consent Decree scheme, though implemented by court-approved private agreement, incorporates several of the remedial tools available to the Commission under the CPSA, including a product ban (on three-wheel ATVs), encouragement of voluntary performance standards, warning label requirements, and a public education campaign
 
 
 [15]
 The Commission said "[i]t is not clear" that a youth ban "will be any more effective in preventing injuries to children than are the [Consent Decree] age recommendations." 56 Fed.Reg. at 47,172. We do not read that statement as suggesting an "either/or" choice between Consent Decree and youth ban. The Commission recognized that it could resume consideration of a youth ban "[i]f subsequent information indicates that the actions taken under the [Consent Decree] are insufficient." Id. at 47,173. That repeated acknowledgment, see id. at 47,167, indicates that CPSC sees the partial product ban as a potential supplement to, and not a displacement of, Consent Decree provisions. Recognition of a youth ban as a supplement to, not a replacement for, the Decree coincides with CPSC staff's suggestion that the partial ban could operate to strengthen warnings to ATV-shoppers and as a further deterrent against dealer noncompliance with minimum age specifications. See J.A. at 344
 
 
 [16]
 The Commission could have proceeded to the proposed rule stage, however, without the strong showing necessary to justify a final rule. See 15 U.S.C. § 2058(c)(1) (proposed rule requires only a "preliminary description of [its] potential benefits and potential costs") (emphasis added). In this light, we note that only in CPSC's brief to this court, see Brief for Respondent at 36-40, and nowhere in the Commission's September 1991 notice terminating the rulemaking, is the argument pressed that the Commission was disarmed by its governing statute from moving forward on the youth ban. See Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168, 83 S.Ct. 239, 246, 9 L.Ed.2d 207 (1962) (cautioning that courts "may not accept appellate counsel's post hoc rationalizations for agency action")
 
 
 [17]
 We review the Commission's decision as of the time it was rendered. In the year and a half since termination of the rulemaking, the Commission may have gathered sufficient data to measure the impact of the Consent Decree
 
 
 [18]
 Petitioners charge that the Commission's efforts to promote ATV safety at the state level, see 56 Fed.Reg. at 47,172-73, coupled with its decision not to impose the youth ban, demonstrate that it is "abdicating" its regulatory responsibilities by shunting them onto the states. See Brief for Petitioners at 40-42. The charge is unwarranted. In noting that it lacked authority directly to regulate ATV users' conduct, the Commission did not describe state efforts as a substitute for effective federal action, but merely sought to point out the necessarily limited impact a youth ban would have on underage ATV-riding. CPSC's endeavor to promote state activity seems to us a salutary supplement to its own efforts to address ATV safety through the Consent Decree. See J.A. at 692, 696, 698-99 (CPSC's draft model state legislation (dated July 31, 1992), including prohibition on adult-size ATV riding by persons under 16 and sale restriction identical to youth ban)
 
 
 [19]
 CPSC Chairman Jacqueline Jones-Smith advocated such a course during the Commission's consideration whether to terminate the rulemaking. See J.A. at 611; see also 15 U.S.C. § 2058(c) (after ANPR, CPSC must wait 60 days before proceeding to proposed rule stage)
 
 
 [20]
 Once it has gauged the impact of the Consent Decree, the Commission will face the difficult decision whether child ATV casualty rates have been reduced sufficiently to obviate the need for further regulatory action. See ANPR, 50 Fed.Reg. at 23,142 (stating that alternative measure such as voluntary standard could render direct regulation unnecessary if alternative measure eliminated or adequately reduced risk of injury). Nothing in this opinion allows the Commission ultimately to avoid deciding whether, notwithstanding improvements attributable to the Consent Decree or other causes, adult-size ATVs present an "unreasonable risk" to children. See Competitive Enterprise Inst. v. NHTSA, 956 F.2d 321, 327 (D.C.Cir.1992) (remanding for agency to calculate effects on consumer safety of decision not to issue regulation and "fac[e] up to the meaning of its choice" by explaining why projected benefits of decision outweigh attendant increase in casualty rates)
 
 
 [21]
 There is no basis in the record for the million dollar annual toll placed on youth ban enforcement by CPSC's Directorate of Economic Analysis, see J.A. at 458, and the Commission did not rely on that unsupported forecast
 
 
 [22]
 In rejecting a ban on all new ATVs, the Commission stressed the absence of "close substitutes for the product." 56 Fed.Reg. at 47,172. This concern bears less weight in regard to the proposed youth ban, for a "youth model" ATV is an available substitute customers may purchase for the enjoyment of children between 12 and 16